IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re TIBCO SOFTWARE, INC.<br>SECURITIES LITIGATION<br><br>_____<br><br>This Document Relates To: All Actions<br>_____/ | Master File No. C 05-2146 SBA<br><br>CLASS ACTION<br><br>**ORDER**<br><br>[Docket Nos. 55, 56] |

This matter comes before the Court on Defendants' Motion to Dismiss the Second Consolidated Amended Complaint. Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS the Motion to Dismiss.

**BACKGROUND**

On March 16, 2006, Plaintiffs filed a Consolidated Amended Complaint, alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. Defendants filed a Motion to Dismiss, which was granted. A detailed discussion of the facts and procedural history of this case can be found in the Order granting the Motion to Dismiss. *See In re Tibco Software, Inc.*, 2006 WL 1469654 (N.D. Cal. May 25, 2006) (hereinafter "Order"). The Court gave Plaintiffs leave to amend, and a Second Consolidated Amended Complaint (SAC) was filed on June 14, 2006.

**DISCUSSION**

The legal standards and analysis set out in the Court's previous Order are incorporated by reference into this Order. *See, e.g.*, *In re Read-Rite Corp. Securities Litigation*, 115 F. Supp. 2d

1181, 1183 (N.D. Cal. 2000) ("With respect to the current pleading, the analysis set forth in the prior Order is largely still applicable and will not be repeated here in detail."). *See also Old Person v. Brown*, 312 F.3d 1036, 1039 (9th Cir. 2002) (holding that under the "law of the case" doctrine, a court is "precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case") (citations omitted).

Plaintiffs have made three substantive changes to the Complaint. First, Plaintiffs have provided additional information about their Confidential Witnesses, and have added six new Confidential Witnesses. SAC at ¶ 27. Second, Plaintiffs have added a new section to the Complaint entitled "reasons why Defendants' statements were materially false and misleading when made." SAC at ¶¶ 86-108. This section contains new allegations based on the statements of the new Confidential Witnesses, but it also contains many allegations that were included in the first Complaint. Third, Plaintiffs have added two new allegations of scienter. SAC at ¶¶ 111-112.[1]

The new information supplied by Plaintiffs is indicative of integration problems after TIBCO's acquisition of Staffware. The accuracy of certain statements by Defendants regarding the successful integration of the two companies is dubious. However, Plaintiffs still completely fail to sufficiently plead scienter.

Plaintiffs' first new scienter allegation is that, according to Confidential Witness (CW) 3, Defendants Ranadivé and Mashruwala were responsible for the planning and execution of TIBCO's

---

[1] The section of the Complaint entitled "Additional Scienter Allegations" contains a number of allegations, but nearly all of them were included in the first Complaint. Plaintiffs include new facts in this section regarding TIBCO's stock repurchase program – or, more accurately, Plaintiffs offer a scholarly article about stock repurchases. *See* SAC at ¶ 122. However, the Court does not consider this an additional scienter allegation. Rather, it is an attempt by Plaintiffs to relitigate an issue previously decided – namely, that TIBCO's stock repurchase program did not, by itself or in combination with other facts, give rise to a strong inference of fraudulent intent. Aside from the discussion of the stock repurchase program, there are only two allegations of scienter that were not included in the previous Complaint.

Defendants request Judicial Notice of the aforementioned scholarly article, as well as various other documents. With the exception of the article and an order in another case, *In re Applied Signal Technologies, Inc. Securities Litigation*, No. 05-1027, all of the documents included in the Request were judicially noticed in the Court's previous order. The authenticity of the new documents is not disputed. Thus, Defendants' request for Judicial Notice is GRANTED.

integration of Staffware. According to CW 11, Ranadivé "'ran the show,' and it was clear that he did and was involved in everything at the Company." Mashruwala's involvement was confirmed by Ranadivé in a conference call on June 17, 2004, in which he stated that Mashruwala was "basically overseeing the integration." Plaintiffs allege that "Ranadivé and Mashruwala were admittedly familiar with all aspects of the Staffware integration." SAC at ¶ 111. Plaintiffs presumably intend the Court to infer that because Ranadivé and Mashruwala were closely involved in the TIBCO/Staffware integration, they were aware that the integration was not going well, and Ranadivé's statements to the contrary were knowingly or recklessly false when made.

However, that is not "the most plausible of competing inferences." *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (quoting *Helwig v. Vencor, Inc.*, 251 F.3d 540, 553 (6th Cir. 2001)). CW 3's statement is not specific enough to support a strong inference of scienter. Rather, it is a general statement about the duties of high-ranking corporate executives. *See In re Read-Rite Corp. Securities Litigation*, 115 F. Supp. 2d 1181, 1183 (N.D. Cal. 2000) (holding that allegations of scienter are insufficient where they "rest on the assumption that persons with the job titles or duties of the individual defendants *would surely have known* the facts in question"). Further, CW 3 does not have an apparently reliable basis for making statements about Ranadivé and Mashruwala's responsibilities – CW 3 was several levels down the reporting structure from Ranadivé, and worked out of New York, not the company's Palo Alto headquarters. It is not clear how CW 3 would have known how Ranadivé and Mashruwala were spending their time. *See* Order at *22 ("Plaintiffs do not allege any facts showing whether CW3 was involved in TIBCO's forecasting or integration processes or even had contact with the Individual Defendants"). Likewise, CW 11's statement that Ranadivé "ran the show" and was involved with everything at the company is conclusory and insufficient to plead scienter. It is simply too general, and fails to explain the basis for CW 11's knowledge of what Ranadivé knew about the details of the TIBCO/Staffware integration. Further, as Defendants point out, CW 11 left Staffware soon after the merger, several months before the start of the class period. CW 11 is thus not in a position to offer reliable information about what

Ranadivé knew during the relevant time period.

Further, the fact that Ranadivé stated in June 2004 that Mashruwala was overseeing the integration of Staffware does not support Plaintiffs' bald assertion that "Ranadivé and Mashruwala were admittedly familiar with all aspects of the Staffware integration." The fact that Mashruwala was overseeing the integration does not mean he was aware of every problem that arose. Finally, as discussed in the previous Order, Plaintiffs have not identified any false statements made or ratified by Mashruwala (and they cannot take advantage of the group pleading doctrine). *See* Order at *27-28.

Plaintiffs' second new allegation of scienter is similarly insufficient. Plaintiffs allege that Defendants O'Meara and Carey also knew the details of the Staffware integration. According to CW 7 (who reported directly to Carey), Carey was responsible for and directed the financial integration of the two companies, and O'Meara was strategically involved with the financial integration. CW 7 met with Carey and O'Meara in February 2005 and was informed that they had decided to change their financial integration strategy. According to CW 7, it was ultimately Carey and O'Meara's responsibility to implement the accounting treatments of Staffware sales contracts to comply with GAAP. SAC at ¶ 112.

Defendants argue that CW 7's statements are not reliable because CW 7 was not located at TIBCO's headquarters and was not involved in TIBCO's decision-making process. There is some force to these arguments. Further, CW 7's statement is not specific enough to raise a strong inference of scienter. CW 7 states that Carey and O'Meara headed up the integration effort, but he/she does not allege that they were aware of the specific integration problems identified by the other CWs, including IT difficulties, "culture clash," loss of Staffware personnel, and the alleged fact that the products did not work together. In fact, CW 7 does not offer any detail about what Carey knew or did not know, or what information Carey passed along to other TIBCO executives. CW 7's statement that Carey and O'Meara had a meeting in February 2005 to discuss changing their financial integration strategy does not weigh in favor of scienter. Instead, it suggests that Ranadivé's

4

1 statements to the effect that he and other TIBCO executives were not aware of integration problems 2 until the end of the first quarter of 2005 were true: Carey and O'Meara apparently decided to change 3 their strategy in response to the emergence of those problems.

4 The allegations in Plaintiffs' new section entitled "reasons why Defendants' statements were 5 materially false and misleading when made" likewise fail to state "with particularity facts giving rise 6 to a strong inference" that Defendants "acted with deliberate or conscious recklessness." 15 U.S.C. 7 § 78u-4(b)(2); *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.2d 1226, 1230 (9th 8 Cir. 2004). Meeting the high burden of pleading scienter is essential to satisfy the PSLRA and 9 survive the instant Motion to Dismiss. As such, the Motion will be granted.

10 This Court's previous order made it clear that further leave to amend would not be granted: 11 "the Court will grant Plaintiffs one final opportunity to amend their complaint if they can do so in 12 good faith. However, given the fact that this case has been pending for over a year, the information 13 necessary to amend the complaint should be readily available to Plaintiffs." Order at *29. Plaintiffs 14 apparently do not have the information necessary to form the basis of a valid Complaint for 15 securities fraud, and further amendment would be futile. *See Desaigoudar v. Meyercord*, 223 F.3d 16 1020, 1026 (9th Cir. 2000). The Complaint is dismissed with prejudice.

## **CONCLUSION**

18 IT IS HEREBY ORDERED THAT Defendants' Motion to Dismiss is GRANTED 19 WITHOUT LEAVE TO AMEND.

20 IT IS FURTHER ORDERED THAT the Case Management Conference scheduled for 21 October 3, 2006 at 1:00 p.m. is VACATED.

22 IT IS SO ORDERED.

23
Dated: 9/29/06                                    SAUNDRA BROWN ARMSTRONG
24                                                United States District Judge

5